## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>COLUMBUS MCKINNON CORPORATION,<br><br>KKR NORTH AMERICA FUND XI L.P.,<br><br>and<br><br>KITO CROSBY LIMITED,<br><br>*Defendants*. |

## COMPLAINT

Columbus McKinnon Corporation ("CMCO") and Kito Crosby Limited ("Kito Crosby") are two of the leading manufacturers of electric chain hoists and overhead lifting chain in the United States. CMCO's proposed acquisition of Kito Crosby from KKR North America Fund XI L.P. ("KKR") may substantially lessen competition in the markets for the development, manufacture, distribution, and sale of electric chain hoists and overhead lifting chain in the United States in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18. The proposed transaction should therefore be enjoined.

### I.    NATURE OF THE ACTION

1.    Pursuant to a stock purchase agreement dated February 10, 2025, CMCO proposes to acquire all of the outstanding voting securities of Kito Crosby in exchange for approximately $2.7 billion. As part of the transaction, CMCO and Clayton, Dubilier & Rice

Fund XII, L.P. ("CDR") entered into an investment agreement dated February 10, 2025, in which

CDR proposes to purchase approximately 40 percent of the voting securities of CMCO for

approximately $800 million on the condition that CMCO subsequently close its acquisition of

Kito Crosby.

2.     Electric chain hoists use a motor-driven chain system to safely lift and move

heavy loads with ease and precision.  They are often integrated with overhead cranes to

streamline operations in warehouses, factories, and production facilities across nearly every

industry in the United States.

3.     Overhead lifting chain is welded chain made from alloy steel that is manufactured

and tested in accordance with standards published by the American Society of Testing &

Materials ("ASTM").  Due to their superior strength and durability, alloy steel chains that meet

or exceed ASTM's specifications are the only chains recommended by the Occupational Safety

and Health Administration ("OSHA"), the National Association of Chain Manufacturers

("NACM"), and the American Society of Mechanical Engineers ("ASME") for use in lifting

loads into positions in which dropping the load would cause bodily injury or property damage.

4.     The proposed acquisition would eliminate competition between CMCO and Kito

Crosby.  As a result, the proposed acquisition may substantially lessen competition in the United

States for the development, manufacture, distribution, and sale of electric chain hoists and

overhead lifting chain in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

## II.     THE DEFENDANTS

5.     CMCO is incorporated in New York and headquartered in Charlotte, North

Carolina.  CMCO produces a wide range of material handling equipment and is a market leader

in the United States for hoists, material handling digital power control systems, and precision

2

conveyers.  The company has a strong market position in certain chains, forged fittings, and linear actuator products.  In 2024, CMCO had revenues of approximately $1 billion.

6.     Kito Crosby Limited is a private limited company registered in the United Kingdom and headquartered in Arlington, Texas.  Kito Crosby is a global leader in the lifting and securement hardware industry with key products including hoists, cranes, and lifting hardware.  In 2024, Kito Crosby had revenues of approximately $1.1 billion.  Kito Crosby is owned by KKR North America Fund XI L.P., a Cayman Islands exempted limited partnership with its principal place of business in New York, New York.

### III.    JURISDICTION AND VENUE

7.     The United States brings this action under Section 15 of the Clayton Act, 15 U.S.C. § 25, as amended, to prevent and restrain Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.

8.     Defendants develop, manufacture, distribute, and sell electric chain hoists and overhead lifting chain in the flow of interstate commerce.  Defendants' activities in the development, manufacture, distribution, and sale of these products substantially affect interstate commerce.  This Court has subject matter jurisdiction over this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25, and 28 U.S.C. §§ 1331, 1337(a), and 1345.

9.     Defendants have consented to venue and personal jurisdiction in this judicial district.  Venue is therefore proper in this district under Section 12 of the Clayton Act, 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) and (c).

### IV.    BACKGROUND

10.    The material handling industry is responsible for the movement, protection, storage, and control of materials and products through the process of their manufacture,

distribution, consumption, and disposal.  Rigging and lifting equipment are key to material handling as they facilitate the safe and efficient movement of heavy loads in a wide range of applications across the American economy.  Rigging and lifting equipment is pervasive in the industrial and manufacturing, oil and gas, metals and mining, utilities, construction, and automotive industries.

11.    Rigging and lifting equipment includes a variety of hardware, such as chains and shackles, which attach to a load and enable it to be raised and lowered with mechanical force by lifting equipment, such as cranes and hoists.  Operating rigging and lifting equipment to move loads that weigh hundreds or thousands of pounds poses significant risk of serious injuries or fatalities.  Manufacturers of rigging and lifting equipment, including CMCO and Kito Crosby, compete to provide safe and reliable products to their customers.  To that end, they invest heavily in manufacturing with quality materials, safety testing, training end users, and ensuring durability of products in the field.

## V.    RELEVANT MARKETS

12.    Electric chain hoists and overhead lifting chain each constitute a line of commerce as that term is used in Section 7 of the Clayton Act, and each is a relevant product market in which competitive effects can be assessed.  The geographic market for each relevant product market is comprised of sales to customers within the United States.

13.    Each of these relevant markets satisfies the well-accepted "hypothetical monopolist" test, which asks whether a hypothetical monopolist of all products sold in a market likely would impose at least a small but significant and non-transitory increase in price or other worsening terms ("SSNIPT").  Customers could not turn to alternative products to avoid such a

price increase, nor would they so significantly reduce their purchases that the SSNIPT would be unprofitable for the hypothetical monopolist.

### a. **Electric Chain Hoists**

14.     Electric chain hoists use a chain driven by an electric motor to lift, lower, and position heavy materials.  Electric chain hoists are designed to be durable and can be used independently or integrated into a small overhead crane.  Industries across the economy – including automotive, aerospace, energy, construction, and logistics – rely on electric chain hoists daily to increase efficiency and reduce strain on operators.

15.     Electric chain hoists vary in capacity, voltages, chain length, and speed.  Electric chain hoists are ideal for lifting lighter loads (generally less than three tons) and are easy for operators to use.  Although electric chain hoists vary in price depending on their features, the majority of electric chain hoists sold in the United States are priced from approximately $2,000 to $6,000.

16.     While there are other types of hoists that are designed to perform the same basic lifting, lowering, and positioning functions as electric chain hoists, none of the alternatives offer the same value proposition as electric chain hoists, and therefore are not close substitutes.  These other types of hoists are intended for different applications and offer different benefits and drawbacks depending on the environment in which they will be used, how much weight will be lifted, and lift frequency.  Accordingly, these other types of hoists are not effective substitutes for electric chain hoists.

### b. **Overhead Lifting Chain**

17.     Chains vary greatly in strength, durability, and reliability depending on how they are manufactured, metals they are made from, and size.  To ensure safe and proper usage, ASTM

recommends certain specifications for chain used in different applications. The specifications for chain recommended for use in overhead lifting are defined by ASTM as "Grade 80" and "Grade 100." Overhead lifting chain is exclusively made from forged alloy steel while lower grade chain is made from carbon steel or stainless steel.

18.    Chain manufacturers market chain as Grade 80 or Grade 100 and emboss links with the grade for identification purposes. Chains that meet or exceed these specifications are collectively referred to as "overhead lifting chain." Since lower grades of chain are not recommended for overhead lifting by OSHA or ASME due to their inferior strength, there are effectively no substitutes for overhead lifting chain.

## VI.    ANTICOMPETITIVE EFFECTS

19.    In the United States, CMCO and Kito Crosby are the two largest suppliers of electric chain hoists and two of the three largest suppliers of overhead lifting chain. CMCO's proposed acquisition of Kito Crosby would eliminate the competition between them and its future benefits to customers.

20.    The transaction is likely to substantially lessen competition in the market for electric chain hoists in the United States. CMCO and Kito Crosby are the two largest suppliers of electric chain hoists with a combined market share of over 70 percent. The market for electric chain hoists is already highly concentrated and, as evidenced by the parties' combined share, would be significantly more concentrated after the proposed acquisition.

21.    CMCO and Kito Crosby compete directly against one another to provide electric chain hoists to customers. CMCO and Kito Crosby offer more product features and local customer support than other market participants. Defendants have lowered prices and improved customer service as a result of competition from the other.

22.     The transaction is also likely to substantially lessen competition in the market for overhead lifting chain in the United States. CMCO and Kito Crosby are two of the three largest suppliers of overhead lifting chain in the United States and have a combined market share of more than 60 percent. The market for overhead lifting chain is already highly concentrated and would become significantly more concentrated after the proposed acquisition.

23.     CMCO and Kito Crosby compete head-to-head to supply overhead lifting chain to customers. This competition has resulted in lower prices, investments in new production capabilities, and better terms of sale.

24.     After the acquisition of Kito Crosby, CMCO likely would have the incentive and ability to profitably increases prices for and reduce the quality of its electric chain hoists and overhead lifting chain. The proposed acquisition, therefore, may substantially lessen competition for the development, manufacture, distribution, and sale of electric chain hoists and overhead lifting chain in the United States in violation of Section 7 of the Clayton Act.

## VII.    ABSENCE OF COUNTERVAILING FACTORS

25.     Entry or repositioning of new competitors into the markets for the development, manufacture, distribution, and sale of electric chain hoists or overhead lifting chain is unlikely to be sufficient or timely enough to prevent the loss of competition that will result from CMCO acquiring Kito Crosby.

26.     Not only does entering each of the electric chain hoist or overhead lifting chain markets require significant time and investment to set up production facilities and test new products, brand reputation is also very important to competing successfully for customers in the lifting and rigging industries. Electric chain hoists and overhead lifting chain must operate reliably every time to avoid exposing workers to significant risk. Customers often rely on

personal experience and brand recognition as a proxy for quality in selecting a supplier since it can be difficult for customers to evaluate the quality of a particular electric chain hoist or overhead lifting chain.

27.     Potential entrants into the production of electric chain hoists and overhead lifting chain also struggle to compete with established suppliers due to the scale advantages that larger suppliers benefit from given their increased production volumes.  The fact that new entrants have higher average costs than incumbents deters entry into the markets for the development, manufacture, distribution, and sale of electric chain hoists and overhead lifting chain.

28.     As a result of these high barriers, entry into the markets for the development, manufacture, distribution, and sale of electric chain hoists and overhead lifting chain would not be timely, likely, or sufficient to defeat the substantial lessening of competition that would likely result from CMCO's acquisition of Kito Crosby.

## VIII.   VIOLATIONS ALLEGED

29.     CMCO's acquisition of Kito Crosby may substantially lessen competition in the development, manufacture, distribution, and sale of electric chain hoists and overhead lifting chain in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

30.     Unless enjoined, the proposed acquisition likely would have the following anticompetitive effects relating to electric chain hoists and overhead lifting chain, among others:

> (a) actual and potential competition between CMCO and Kito Crosby would be eliminated;
>
> (c) competition likely would be substantially lessened; and
>
> (d) prices would likely increase, service would likely decrease, quality would likely be reduced, and innovation would likely slow.

## IX.     REQUEST FOR RELIEF

31.     The United States requests that this Court:

(a) adjudge and decree that CMCO's acquisition of Kito Crosby would be unlawful and violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

(b) preliminarily and permanently enjoin and restrain Defendants and all persons acting on their behalf from consummating the proposed acquisition of Kito Crosby by CMCO, or from entering into or carrying out any other contract, agreement, plan, or understanding, the effect of which would be to combine CMCO and Kito Crosby;

(c) award the United States its costs for this action; and

(d) award the United States such other and further relief as the Court deems just and proper.

Dated: January 29, 2026

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

ABIGAIL A. SLATER (D.C. Bar #90027189)
*Assistant Attorney General*

MARK HAMER (D.C. Bar #1048333)
*Deputy Assistant Attorney General*

GEORGE C. NIERLICH (D.C. Bar #1004528)
*Acting Director of Civil Enforcement (Mergers)*

SOYOUNG CHOE
*Acting Chief, Defense, Industrials, and
Aerospace Section*

/s/ Gabriella Neizmik
GABRIELLA NEIZMIK (D.C. Bar # 1044309)*
ANNA CROSS
MIRANDA ISAACS
*Trial Attorneys*

U.S. Department of Justice
Antitrust Division
Defense, Industrials, and Aerospace Section
450 Fifth Street NW, Suite 8700
Washington, DC 20530
Tel.: 202-598-8774
Fax: 202-514-9033
Email: gabriella.neizmik@usdoj.gov

*LEAD ATTORNEY TO BE NOTICED