# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>COLUMBUS MCKINNON CORPORATION,<br><br>KKR NORTH AMERICA FUND XI L.P.,<br><br>and<br><br>KITO CROSBY LIMITED,<br><br>*Defendants*. | Case No. |

## ASSET PRESERVATION AND HOLD SEPARATE STIPULATION AND ORDER

It is hereby stipulated by and among the undersigned parties, subject to approval and entry of this Order by the Court, as follows.

## I.  DEFINITIONS

As used in this Asset Preservation and Hold Separate Stipulation and Order ("Stipulation and Order"):

A.  "CMCO" means Defendant Columbus McKinnon Corporation, a New York corporation with its headquarters in Charlotte, North Carolina, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

1

B.     "KKR" means Defendant KKR North America Fund XI L.P., a Cayman Islands exempted limited partnership with its principal place of business in New York, New York, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C.     "Kito Crosby" means Defendant Kito Crosby Limited, a private limited company registered in the United Kingdom with its headquarters in Arlington, Texas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

D.     "Pacific" means Pacific Avenue Capital Partners, LLC, a Delaware limited liability company with its headquarters in Manhattan Beach, California, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

E.     "Acquirer" means Pacific or another entity approved by the United States in its sole discretion to which Defendants divest the Divestiture Assets.

F.     "Divestiture Business" means the business of the development, manufacture, distribution, and sale of Power Chain Hoists and chains by CMCO in the United States.

G.     "Divestiture Assets" means all of Defendant CMCO's rights, titles, and interests in and to all property and assets, tangible and intangible, wherever located, relating to or used in connection with the Divestiture Business, including:

1.     the real property and facility located at 22364 Jeb Stuart Highway, Damascus, Virginia (the "Damascus Facility");

2

2.      the real property and facility located at 560 Rush Street, Lexington, Tennessee (the "Lexington Facility");

3.      the lease dated June 30, 2016 between Defendant CMCO and Pod#2 at Rock Lititz LP for Training Pod #2, located at Suite 40, 201 Rock Lititz Blvd., Lititz, Pennsylvania;

4.      the lease dated July 31, 2025 between Defendant CMCO and Kilo Delta, LLC for 26478 Hillman Highway, Abingdon, Virginia;

5.      the lease dated January 1, 2026 between Defendant CMCO and Ellen Costello for 22798 Jeb Stuart Highway, Damascus, Virginia;

6.      the Transitional Columbus McKinnon Trademark License;

7.      all other real property, including fee simple interests, real property leasehold interests and renewal rights thereto, improvements to real property, and options to purchase any adjoining or other property, together with all buildings, facilities, and other structures;

8.      all tangible personal property, including fixed assets, machinery and manufacturing equipment, tools, vehicles, inventory, materials, office equipment and furniture, computer hardware, and supplies (including tangible personal property located at the Wadesboro Facility);

9.      all contracts, contractual rights, and customer relationships, and all other agreements, commitments, and understandings, including supply agreements, teaming agreements, joint development agreements, and leases, and all outstanding offers or solicitations to enter into a similar arrangement;

3

10.    all licenses, permits, certifications, approvals, consents, registrations, waivers, and authorizations, including those issued or granted by any governmental organization, and all pending applications or renewals;

11.    all records and data, including (a) customer lists, accounts, sales, and credit records, (b) production, repair, maintenance, and performance records, (c) manuals and technical information Defendants provide to their own employees, customers, suppliers, agents, or licensees, (d) records and research data concerning historic and current research and development activities, including designs of experiments and the results of successful and unsuccessful designs and experiments, and (e) drawings, blueprints, and designs;

12.    all intellectual property owned, licensed, or sublicensed, either as licensor or licensee, including (a) patents, patent applications, and inventions and discoveries that may be patentable, (b) registered and unregistered copyrights and copyright applications, and (c) registered and unregistered trademarks, trade dress, service marks, trade names, and trademark applications; and

13.    all other intangible property, including (a) commercial names and d/b/a names, (b) technical information, (c) computer software and related documentation, know-how, trade secrets, design protocols, specifications for materials, specifications for parts, specifications for devices, safety procedures (e.g., for the handling of materials and substances), quality assurance and control procedures, (d) design tools and simulation capabilities, and (e) rights in internet web sites and internet domain names.

*Provided, however*, that the assets specified in Paragraphs I.G.1–13 above do not include (1) the interests in the Wadesboro Facility; or (2) any intellectual property associated with the

4

brand names "Columbus McKinnon," "CMCO," or "CM" other than what is provided in the Transitional Columbus McKinnon Trademark License.

H.     "Divestiture Date" means the date on which the Divestiture Assets are divested to Acquirer pursuant to the Final Judgment.

I.     "Electric Chain Hoists" means motorized lifting devices, powered by electricity, that lift, lower, and position heavy loads using a chain.

J.     "Including" means including, but not limited to.

K.     "Overhead Lifting Chain" means high-strength, alloy steel chain specifically engineered for lifting, suspending, or maneuvering heavy loads.

L.     "Power Chain Hoists" means motorized lifting devices, irrespective of the source of power, that lift, lower, and position heavy loads using a chain.

M.     "Relevant Personnel" means all full-time, part-time, or contract employees of CMCO, wherever located, whose job responsibilities relate in any way to the Divestiture Assets, at any time between February 10, 2025, and the Divestiture Date, including employees of CMCO whose job responsibilities relate to the international sale of Power Chain Hoists and chains manufactured in the United States. The United States, in its sole discretion, will resolve any disagreement relating to which employees are Relevant Personnel.

N.     "Transaction" means the proposed acquisition of Kito Crosby by CMCO.

O.     "Transitional Columbus McKinnon Trademark License" means a non-exclusive, non-transferrable, sublicensable, fully paid-up, royalty-free, worldwide license to use the "CM" marks in connection with the Divestiture Business for a period of eight years following the Divestiture Date.

P.    "Wadesboro Facility" means Defendant CMCO's facility located at 2020 Country Club Road, Wadesboro, NC 28170.

## II.    OBJECTIVES

The proposed Final Judgment filed in this case is meant to ensure Defendants' prompt divestiture of the Divestiture Assets for the purpose of establishing a viable competitor in the development, manufacture, distribution, and sale of electric chain hoists and overhead lifting chain in the United States in order to remedy the anticompetitive effects that the United States alleges would otherwise result from the Transaction. This Stipulation and Order ensures that, prior to divestiture, the Divestiture Assets remain independent, economically viable, competitive, and saleable; that Defendants will preserve and maintain the Divestiture Assets; and that the level of competition that existed between Defendants prior to the Transaction is maintained during the pendency of the required divestiture of the Divestiture Assets.

## III.    JURISDICTION AND VENUE

The Court has jurisdiction over the subject matter of this action and over the parties to it. Venue for this action is proper in the United States District Court for the District of Columbia. Defendants waive service of summons of the Complaint.

## IV.    CONSUMMATION OF THE TRANSACTION

Defendants will not consummate the Transaction before the Court has signed this Stipulation and Order.

## V.    COMPLIANCE WITH AND ENTRY OF FINAL JUDGMENT

A.    The proposed Final Judgment filed with this Stipulation and Order, or any amended proposed Final Judgment agreed upon in writing by the United States and Defendants, may be

filed with and entered by the Court as the Final Judgment, upon the motion of the United States

or upon the Court's own motion, after compliance with the requirements of the Antitrust

Procedures and Penalties Act ("APPA"), 15 U.S.C. § 16, and without further notice to any party

or any other proceeding, as long as the United States has not withdrawn its consent. The United

States may withdraw its consent at any time before the entry of the Final Judgment by serving

notice on Defendants and by filing that notice with the Court.

B.      From the date of the signing of this Stipulation and Order by Defendants until the

Final Judgment is entered by the Court, or until expiration of time for all appeals of any ruling

declining entry of the proposed Final Judgment, Defendants will comply with all of the terms

and provisions of the proposed Final Judgment.

C.      From the date on which the Court enters this Stipulation and Order, the United

States will have the full rights and enforcement powers set forth in the proposed Final Judgment

as if the proposed Final Judgment were in full force and effect as a final order of the Court, and

Section XIV of the proposed Final Judgment will also apply to violations of this Stipulation and

Order.

D.      Defendants agree to arrange, at their expense, publication of the newspaper notice

required by the APPA, which will be drafted by the United States in its sole discretion. The

publication must be arranged as quickly as possible and, in any event, no later than three

business days after Defendants' receipt of (1) the text of the notice from the United States and

(2) the identity of the newspaper or newspapers within which the publication must be made.

Defendants must promptly send to the United States (1) confirmation that publication of the

newspaper notice has been arranged and (2) the certification of the publication prepared by the newspaper or newspapers within which the notice was published.

E.      Any person who wishes to submit to the United States written comments regarding the proposed Final Judgment should do so within 60 calendar days beginning with the first day of the publication of the newspaper notice required by APPA or the publication of the proposed Final Judgment and the Competitive Impact Statement in the *Federal Register* as required by APPA, whichever is later.

F.      This Stipulation and Order applies with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the United States and Defendants and filed with the Court.

G.      Defendants represent that the divestiture ordered by the proposed Final Judgment can and will be made and that Defendants will not later raise a claim of mistake, hardship, or difficulty of compliance as grounds for asking the Court to modify any provision of the proposed Final Judgment or this Stipulation and Order.

H.      This Stipulation and Order, including the proposed Final Judgment filed with this Stipulation and Order or any amended proposed Final Judgment agreed upon in writing by the United States and Defendants, constitutes the final, complete, and exclusive agreement and understanding among the United States and Defendants with respect to the settlement of the claims expressly stated in the Complaint filed in this above-captioned case, and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.

## VI.     ASSET PRESERVATION AND HOLD SEPARATE

From the date of the signing of this Stipulation and Order by Defendants and until the divestiture required by the proposed Final Judgment has been accomplished:

A.     Defendant CMCO must take all actions necessary to operate, preserve, and maintain the full economic viability, marketability, and competitiveness of the Divestiture Assets including by (1) operating the Divestiture Assets in the ordinary course of business and consistent with past practices and (2) providing sufficient working capital and lines and sources of credit.

B.     Defendant CMCO must use all reasonable efforts to maintain and increase the sales and revenues of the products provided by the Divestiture Assets and must maintain at 2025 or previously approved levels for 2026, whichever are higher, all promotional, advertising, sales, technical assistance, customer support and service, marketing, research and development, and merchandising support for the Divestiture Assets.

C.     Defendant CMCO must use all reasonable efforts to maintain and preserve existing relationships with customers, suppliers, governmental authorities, vendors, landlords, creditors, agents, and all others having business relationships relating to the Divestiture Assets.

D.     Defendant CMCO must maintain, in accordance with sound accounting principles, separate, accurate, and complete financial ledgers, books, or other records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues, and income of the Divestiture Assets.

E.     Defendant CMCO must maintain the working conditions, staffing levels, and workforce training and expertise of all Relevant Personnel. Relevant Personnel must not be

9

transferred or reassigned except to Acquirer or via transfer bids initiated by employees pursuant to Defendants' regular, established job posting policy. Defendant CMCO must provide the United States with 10 calendar days' notice of the transfer of Relevant Personnel, and, upon objection by the United States to such transfer, Relevant Personnel may not be transferred or reassigned. Defendant CMCO must use all reasonable efforts, including by providing financial incentives, to encourage Relevant Personnel to continue in the positions held as of the date of the signing of this Stipulation and Order by Defendants, and financial incentives may not be structured so as to disincentivize employees from accepting employment with Acquirer.

F.      Defendant CMCO must maintain all licenses, permits, approvals, authorizations, and certifications related to or necessary for the operation of the Divestiture Assets and must operate the Divestiture Assets in compliance with all regulatory obligations and requirements.

G.      Defendant CMCO must take all steps necessary to ensure that the Divestiture Assets are fully maintained in operable condition at no less than their current capacity and level of sales, with the same level of quality, functionality, access, and customer support, and must, consistent with past practices, maintain and adhere to normal repair and maintenance schedules for the Divestiture Assets.

H.      Except as approved by the United States in accordance with the terms of the proposed Final Judgment, Defendants must not remove, sell, lease, assign, transfer, pledge, encumber, or otherwise dispose of any of the Divestiture Assets.

I.      Defendants must take no action that would jeopardize, delay, or impede the sale of the Divestiture Assets.

J.    Management, sales, and operations of the Divestiture Assets must be held entirely separate, distinct, and apart from Defendants' other operations. Defendants must not coordinate the production, marketing, or terms of sale of any products produced or sold by the Divestiture Assets with the production, marketing, or terms of sale of any other products produced or sold by Defendants.

K.    Defendants must appoint, subject to approval of the United States in its sole discretion, a person or persons to oversee the Divestiture Assets. Such person or persons will be responsible for Defendants' compliance with this Section VI, for managing the sales and operations of the Divestiture Assets separately from Defendants' other operations, and for ensuring the preservation of the Divestiture Assets for the duration of this Stipulation and Order. In the event any such person is unable to perform his or her duties, Defendants must appoint, subject to the approval of the United States in its sole discretion, a replacement within 10 business days. Should Defendants fail to appoint a replacement acceptable to the United States within this time period, the United States will appoint a replacement.

L.    Within 20 calendar days after the entry of this Stipulation and Order, Defendants will inform the United States of the steps Defendants have taken to comply with this Stipulation and Order.

## VII.   DURATION OF OBLIGATIONS

Defendants' obligations under Section VI of this Stipulation and Order will expire upon the completion of the divestiture required by the proposed Final Judgment or unless otherwise ordered by the Court. In the event that (1) the United States has withdrawn its consent, as provided in Paragraph V.A of this Stipulation and Order; (2) the United States voluntarily

11

dismisses the Complaint in this matter; or (3) the Court declines to enter the proposed Final

Judgment, the time has expired for all appeals of any ruling declining entry of the proposed Final

Judgment, and the Court has not otherwise ordered continued compliance with the terms and

provisions of the proposed Final Judgment, Defendants are released from all further obligations

under this Stipulation and Order, and the making of this Stipulation and Order will be without

prejudice to any party in this or any other proceeding.

Dated: January 29, 2026

FOR PLAINTIFF
UNITED STATES OF AMERICA:

    /s/ Gabriella Neizmik

GABRIELLA NEIZMIK (D.C. Bar #
1044309)
ANNA CROSS
MIRANDA ISAACS
United States Department of Justice
Antitrust Division
Defense, Industrials, and Aerospace Section
450 Fifth Street NW, Suite 8700
Washington, DC 20530
Tel.: 202-598-8774
Email: gabriella.neizmik@usdoj.gov

FOR DEFENDANT
COLUMBUS MCKINNON
CORPORATION:

    /s/ Kenneth B. Schwartz

KENNETH B. SCHWARTZ
JUSTINE M. HAIMI
Skadden, Arps, Slate, Meagher & Flom LLP
1 Manhattan West
New York, NY 10001
Telephone: (212) 735-2731
Email: ken.schwartz@skadden.com

FOR DEFENDANTS
KKR NORTH AMERICA FUND XI L.P.
and KITO CROSBY LIMITED:

    /s/ Peter Guryan

PETER GURYAN
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2750
Email: peter.guryan@stblaw.com

MATTHEW EVOLA
DC Bar Number: 1613352
Simpson Thacher & Bartlett LLP
900 G Street, NW
Washington, D.C. 20001
Telephone: (202) 636-5548
Email: matthew.evola@stblaw.com

Respectfully submitted,

## <u>ORDER</u>

IT IS SO ORDERED by the Court, this _____ day of _____, _____.

_____
United States District Judge